We move to the third case this morning, Koty v. County of Dupage. May it please the Court, Jeffrey M. Jacobson and Mary Sparrow on behalf of Eric Koty. Count 1 was dismissed in error. The complaint set forth enough for the defendant to be put on notice. The allegations posed a right to relief that was beyond the speculative level. The level of pleading the District Court required was higher than is recorded by the Seventh Circuit. The District Court granted summary judgment on count 2 in error. It was clearly a question of fact. In addition, the District Court's determination defendants' actions as minor, trivial, and frustrating are volatile of Ortiz in considering all the evidence as a whole. Not considering them individually as the Court did, the District Court erred by finding there was no casual connection to defendants' actions. The issue that the defendants punished Mr. Koty for his protective activity is one that should have been for the jury to decide. Mr. Koty had witnesses that were in management roles that claimed that the sheriff's moving Mr. Koty to the courthouse was punishment. I'm not sure why people like Mr. Koty want to be in front of bullets, but he worked in special operations on top of being sheriff. This is a job that he was in, and there's no question about that. That was taken away also because he submitted an EEOC complaint. It might have been different if he had waited a couple of years since the Crown-Vix could no longer produce it. It's not a record, but they actually were stopped production, and so it is a record that the sheriff had a pool of SUVs. And you're right, at one point these Crown-Vix, yeah, that's why you don't see them on the streets anymore. Does the record indicate what Mr. Koty's personal vehicle was? His personal vehicle? His personal vehicle. I don't recall it being in the record. Thank you. And maybe we'll find that out for you on rebuttal. We argue that the standard for the complaint must be more than speculative. There's no question about it. However, in the Carlson case, it states that employers are familiar with discrimination claims and know how to investigate them, so little information is required to put an employer on notice of this complaint. So on the first count on discrimination, we had to show that he had a disability, which we did. We even had medical information on his disability. We also had to show he could do his job. Not only could he be a deputy sheriff, but he was on special operations, also referred to as SWAT. Then there has to be adverse action, which we argue in the complaint that the adverse action was moving him to the courthouse instead of letting him be on the street. The elements for retaliation are he's engaged in protective activity, suffered adverse action, and has a casual connection. His request for an SUV was simple. He had a medical condition that was a disability. Instead, he was immediately moved to the courthouse. He gave them the EEOC complaint, and within 24 hours, he gets moved to the courthouse. The requirements for the complaint, I think, are simple. He needs to give the defendant sufficient notice. He states in his complaint his medical condition. He states he can't drive certain vehicles. He has numbness. He has substantial pain. He had to have knee surgery. He takes medication, injections, and patches. He's limited to certain vehicles because of that. He can't lift heavy objects or lift over his head. And after driving, he must remain stationary for a while. So that's all in the complaint. And we believe the court had erred, and we should have been able to move ahead. We believe to jury, but at least a summary judgment motion. Now, not driving an SUV was one of the restrictions that the doctor had given. And this had been going on for a while. Since 2011, he had been complaining about the driving. In fact, there was, prior to the April 7th doctor note, there was a prior doctor note that said an SUV is something that he should be in. It wasn't absolutely required. But there was no interaction by the employer at all. He never had a conference, and in laying back, there's some kind of interaction that should have occurred. When he gave him the doctor's note on April 7th and said an SUV is needed because of his leg wound, they could have sat down and said, what do you need? They could have found out whether he actually sat in an SUV and knew that there wasn't any pain. They could have contacted the doctor. And in fact, they don't do anything on that day. They let him do his shift in the Crown Victoria. It isn't until the next day. And bear in mind, he also gave an EEOC complaint on that day. It's the next day where they say, we're moving you to the courthouse. And of course, their argument is, we have no alternative. We can either send him home or move him to the courthouse. But as we know, that's not true. The SUV was an alternative. It did work. And ultimately, he is in an SUV. Well, wouldn't it be a safer thing for them to do, though, is take him off the road? So there's a case that just came down. I think it was in April, the Freeland case. It was after we drafted our, after we wrote our briefs. It says the question was whether a reasonable person in plain of circumstances would be dissuaded from engaging in protective activity. And what we're arguing is that's not the safest. This is a gentleman. His life is to stand in front of bullets, is to protect people. And so he even went, and he's one of the few elite that's on SWAT. It's like taking someone in a job, for example, that works in a library and complains that they're cheated. You know how many officers in the federal service have been killed at the courthouse? I honestly don't, Judge. Well, it's substantial. So that may or may not be the case. Not that, I know that's a fact. And Mr. Cody may want to move to the federal courthouse, but in DuPage. He's not going to be moving to the federal courthouse. In any event, I understand what your argument is. But you can also argue the other way, that to get him out of the car so it's not bothering his back, which is the main complaint, they put him on a duty that doesn't require him to drive, drive at least while on duty. And there's no dispute he can do the courthouse job. In fact, he can pretty much do anything. The question is whether someone in his circumstances, whether that was a punishment. And the record shows that were two people in management, the quartermaster and Chief Bilodeau, that said going to the courthouse is a punishment. And so we think the jury should have been able to hear. There's a question of fact. Is moving him to the courthouse- I understand there's some officers who believe that is a punishment. I agree. And this isn't just an officer. He went on SWAT. And that's, for me, nuts. But that's what he wants to do in his life. That's what his altruistic attitude is. So we have the transfer. The duties are different. Training is different in the courthouse. And so if he sits at the courthouse too long, he may never be able to go into SWAT. He loses some benefits from that on top of just the actual job. Then what they do, shortly after they transfer him, they say, now you can't be on SWAT because you're in the courthouse. There's no policy. There's no reason. And we argue the protectual issue, that there's no policy in our brief. Ironically, while in the courthouse, he's returned to SWAT later, much later. It was supposed to be temporary. So not only did they have no real reason for taking him off SWAT, but they had explained, we can keep him on SWAT while he's in the courthouse. Then the other thing they do, and one of the things is, in Ortiz, it says you can't just keep looking at each one of the elements and say, ah, that's not a big element, that's not a big one. You have to look at the picture as a whole on all the things they did. Then they require him to make a plan for his gear to reactivate into SWAT. No policies, no procedures. In the record, no one else has ever had to do this, and in SWAT, it's a 24-7 job. Well, but he only missed a few training exercises. He didn't lose any pay or have a career setback. So one of the things I thought about that is if you just tap someone in the chest one or two times, it may not be too bad. But a few times, at a certain point, it's clear it's a punishment. It's clear, don't file an EEOC complaint. That's the question of where the court draws the line in letting this go to the jury. Does the record indicate whether any of the other officers who carried their equipment in their cars, were they driving official cars or were they driving their personal vehicles? The record seemed to be very vague on that. It said they were driving unmarked vehicles. I apologize. My time's up. May I answer the question? So the record is clear. All the people in SWAT, including Mr. Cody, when he's not riding around in his car, they use their personal vehicles. And they never had to create a policy for it. They may be out with their family, and when they get a call, they jump and go to the sheriff's office in their personal vehicle. There is a policy. I don't know about your situation. Where you are required to make sure you have a secure locked thing in your personal car if you're going to be doing courthouse duty. And that would be fine if there was this policy. We wouldn't be able to argue this issue that there isn't anything. But in this case, there weren't any policies. Well, I'm warning you, it's not out of line. There may not be a written policy. But no one else had to do it, as I pointed out to the judge. Thank you. Thank you, Counsel. Good morning, Your Honors. May it please the Court, Counsel. My name is Gregory Vasey. I represent the Sheriff of DuPage in this case as the epilee. If I can just say, with respect to the unmarked cars, because I'm sure I won't remember to come back to that. I don't believe there were any cops that were using their private vehicles. I believe every car other than Deputy Cody's was an official vehicle, undercover vehicle that they brought to the record. So this was obviously an unusual case for an officer to be on SWAT and to be brought into a situation where he was now in court services instead of on patrol. I don't think the record contains— Well, SWAT may not have anything to do with it, though, if he has a personal weapon. Correct. I mean, when he was— Correct. Right. I mean, the SWAT weapons are separate and apart from the—if they do carry a weapon inside the courthouse, they have, you know, semi-automatic rifles and what have you.  Right. So as an overview of this case, I've had this case now since 2015. And from that time until today, I have not found any basis for this case being filed other than for Deputy Cody to get a cooler car, to get rid of his Crown Vic, and to get an interceptor, which, as counsel mentioned, he now has. He's had it for a while. And my basis for saying that is when you look at the complaint and as far as how it's pleaded, it's pleaded in a way so that there are no indications that he's substantially limited in a major life activity. That is specifically absent from that complaint, which is why it got dismissed several times. Paragraph of the operative complaint in this case, which is the first amended complaint, paragraph SS, specifically states that he has a substantial limitation in the major life activity of driving certain vehicles, which this court has found in the Winsley case that driving in and of itself is not a major life activity. So clearly driving in a Crown Victoria or driving in an Explorer or any other type of vehicle is not a major life activity. That's the reason why the case or the count one got dismissed, the failure to accommodate claim. He didn't want to put a major life, this is my take on it, he didn't want to put a major life activity that he was substantially limited in. Because that would have affected his ability to be a police officer. Possibly it could have affected the essential functions of that job, and he wouldn't have been able to be a law enforcement officer in the court services or in patrol. And then once he, again, that was properly dismissed, there's really nothing else to say about that claim. With respect to the retaliation claim. Without nothing more to say about which claim? The failure to accommodate claim that was dismissed on the 12B6. So, I mean, the main crux of this case relates to the retaliation claim. I would respectfully submit to the court that the EEOC charge, the unfiled EEOC charge that was tendered to his superiors along with a doctor's note, was done to use that as a shield to some action that might be taken against him that he didn't want. In this case, it's clear from the record, he did not want to go to the courthouse, he wanted to get a different car. He testified to that in his deposition. How old is this officer?  How old is the officer? I want to say he's late 30s. Because sometimes officers who are younger prefer duty other than courthouse duty. Older officers don't mind it, but younger officers prefer not to have courthouses. Right. No, and it's clear from the record that he did prefer to be on the street. He's on the street now. So what occurred there, he gave the unfiled EEOC claim, EEOC charge to his superiors along with the doctor's note. And that put them in the position, with the doctor's note actually put them in the position of having to accommodate this restriction. And the restriction at that time was he can no longer drive in his assigned vehicle. Up until that time, it was he would prefer, it would be preferable to have a different vehicle. And that particular doctor's note that was tendered along with the EEOC charge was he can no longer drive in that vehicle. So that the sheriff now is confronted with either having him stay home or going to the courthouse, and that's what they chose. And that was a perfectly reasonable accommodation for that restriction. And I know the court is aware that previous to that, the sheriff's office had measurements taken of the Crown Vic, the leg room in the Crown Vic and the leg room in the Explorer or Interceptor. And it was the sheriff's determination that there was actually more leg room in the Crown Vic. So the Explorer is essentially taken out of the mix. Whether there were some available or not is kind of a red herring. There wasn't any argument or concern about getting in and out of the vehicle. It was the leg room once you're in it. The only thing the doctor note said was he needs a vehicle with more leg room like an SUV. So obviously the sheriff's office focused on the medical part, which is the leg room, because like an SUV it could mean anything. So there were five, just focusing on the EEOC charge and what occurred after that, there were five alleged adverse actions. If you'll notice from the complaint, there's only one that's pled and that's being moved to the courthouse. All of the other ones, the other four, I brought on myself by asking questions at his deposition. Is there anything else? I'm trying to kind of lock him out from later on saying, oh, but this is also retaliatory. So at his deposition, he came up with that was placed on inactive SWAT status. I had to have a safety plan approved. When I returned from the courthouse post-surgery, they put me back in the courthouse. And then once I went back to patrol, I was given the midnight shift. I point out to the court that at summary judgment, the court found, and accurately so, that the plaintiff essentially waived argument on all of those. And in my estimation, those were all kind of tag along that he came up with at the deposition. But again, he waived argument on the SWAT regarding whether it was an adverse action. He waived on approval of the safety plan. He waived causation arguments on that. Also returning to the courthouse post-surgery and being placed on the midnight shift upon his return to patrol. So really, the only argument that is made in summary judgment and before this court is his transfer to the courthouse. And not surprisingly, I would say that the district court got it exactly right as far as his attempt to repackage failure to accommodate claim as a retaliation. There was no adverse action, and there was no evidence of pretext. As I mentioned, the measurements had been taken to the car, and that was ruled out because the leg room was actually more in the crown vic when you consider the seat pan. That argument is not addressed in the plaintiff's brief. And then the only other evidence that is set forth in plaintiff's brief is the argument that it was a punishment post. And the testimony was from three other sheriff's employees that in their estimation, it is a punishment to be placed in the courthouse. Absence of any context or anything like that, strictly a conclusion drawn by these people. It wasn't considered by the district court. It should also not be considered by this court. Ultimately, what we have is with respect to the retaliation claim is a lack of evidence of any kind to support any of the elements that are necessary. You may have answered this question. Judge Brennan asked your opposing counsel what kind of vehicle your client drives or the officer drives. Was that in evidence? It was not in evidence. I think I probably have heard the answer to that question, but I don't feel that I can communicate that to the court with any confidence that it's accurate. All right. Thank you. Thank you. You had time left for your argument. Ms. Sparrow? May it please the court. Mary Sparrow on behalf of Eric Cody for rebuttal. Judge, you had asked, didn't they, for safety, wasn't it that they took him off the road because of the pain in his back? In fact, the day that he turned in the doctor's note, the second one in question, which said that an SUV was necessary, a vehicle with more legroom like an SUV is necessary, and then at the same time turned in the EEOC complaint, they put him back in his car that day and he spent his full shift in the Crown Victoria. It wasn't until the next day. Well, that wasn't communicated as sort of an emergency, was it, that he had to be done right away? Pardon me? As far as what the doctor said? No, but that was not the first doctor's note. There was two that are acknowledged in the complaints, and if you look at the timing, the first one was in February, and that said. Meeting more legroom? Yeah, that also said a vehicle with more legroom like an SUV is preferred. The second one says, which is April, says a vehicle with more legroom like an SUV is necessary. It was before that February doctor's note, the first one acknowledged, that those measurements were taken between an SUV and a Crown Victoria at the suggestion of the Sheriff's Department. They had risk management come in and take these measurements, which would indicate, and Cody had testified in his deposition, there were previous doctor's notes. So obviously they knew there was an issue with legroom between an SUV and a Crown Victoria, and that the doctor had an issue with it. And so they were very aware of this problem. And what I have issue with is that they had no interaction with either the doctor or Cody. Those notes saying that like an SUV, they want to concentrate on that legroom word. They totally want to disregard those words like an SUV as each note. This would all be a problem in terms of the interactive process, which I think is what you're getting to. That is. But you first have to show that he was impaired with respect to a major life activity. And how have you done that? That is true. And in the complaint, it does say that he has a medical diagnosis of this hip impingement and that it affects his ability to drive his car, which is his work. It's work. It's ability to do a very finite number of jobs, not to work generally. Am I right? Well, yes. In fact, the man has worked throughout this whole thing. He did work as a police officer. His job was in the law division. That's where his job was. He was a patrol officer in that division. So it required him to drive his vehicle. You're ignoring a lot of case law, aren't you? It says that the ability to work means to work in a broad range of jobs in terms of the ADA. All you've been able to show us is that he couldn't work in a particular car in a particular job. But I think what I'm getting at is this. Under the ADA, under the statute, it says an individual has a disability. If he has a physical or mental impairment that substantially limits one of the more major life activities, but can nevertheless perform his job with or without an accommodation. And in this instance, he had this disability. Although he could perform his job, and the doctor said he can perform as a patrol officer, it was the one function of being in that particular car that aggravated his diagnosed medical hip impingement. And so he made a reasonable accommodation request. I mean, I liken it to someone who sits in a wheelchair, can obviously perform some administrative function. They ask for an accommodation to their desk because of the wheelchair. And does that mean they should be put in the cafeteria in front of the cash register? I liken this to that. He made a reasonable accommodation. It wasn't one that created a hardship for the sheriff's office. The sheriff's office had the SUVs, and there was testimony of that. And in fact, the sheriff at one point, the quartermaster was getting an SUV ready for him, and the sheriff requested that he stop. The judge in the district court made a statement about that, saying that we showed no timing that the sheriff made that request after the doctor's note was submitted, assuming, I guess, that the sheriff was unaware of the doctor's note, if it was before that time. But the judge in the district court also says the sheriff's office was aware of the problems that the plaintiff was having from 2011 on. The sheriff's office was well aware that there was a problem. Then he got a medical diagnosis, and the doctor started sending notices indicating the same and also saying that an SUV, like an SUV, was requested. And then when he submits his EEOC complaint, a simple call to the doctor as to the intent and meaning of the doctor's notices would have cleared up why, like an SUV, was needed, which at that time, too, the sheriff's office gave Cody, when they transferred him to the courthouse, they gave him another medical form to have his doctor fill out. And although, and he returned that, this was in April, he returned that in May, and that doctor's note, that form, indicated that it was an elevated seating position that was needed. They claim when they went to return him to SWAT, which was the next September, the note that tells him that he's going to be returned to the SWAT team said that they are now in receipt of the doctor's, this additional form, which he gave them in May, months earlier. And that form clears up very well that it's an elevated position that's needed. A simple call to the doctor when that EEOC complaint came in would have told them that immediately. Thank you. Counsel, do you have a cite from the Johnson deposition with regard to that witness's testimony about the transfer to the courthouse being punishment? I believe it's in my brief, yes, that I think there is a... ...that was submitted to the district court, but is there actually a reference to the deposition page cite, if you happen to have it handy? You know, and I'm sorry, I don't have that information in front of me. If we can't locate it, we'll get in contact with you. That testimony was determined to be inadmissible, or at least not determined to be. You argued, or the other side argued, it's inadmissible. The testimony of the three officers that said there was a punishment? Yes. Yes. And there was argument, but was it ever ruled to be inadmissible or admissible? No, it was never ruled to be inadmissible. And I question, to me, that's one of the reasons why this is not properly dismissed on summary judgment motion, because it has been acknowledged that that testimony by three different officers is in the record, and why that testimony should be dismissed without, to me, those are questions, genuine questions of material fact that should be decided by a trial, not just disregarded by this ruling of summary judgment in favor of the defendant. Counsel, you've gone considerably over your time. Oh, I am so sorry, Your Honor. Thank you for your time. Thank you. Thanks to both counsel. The case will be taken under advisement.